Alexa Richman-LaLonde
RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Susan E. Brice
Jennifer T. Nijman
Kristen L. Gale
(*pro hac vice* motion to be filed)
NIJMAN FRANZETTI, LLP
10 S. LaSalle St., Ste 3600
Chicago, IL 60603
Tel: (312) 251-5250 Fax: (312) 251-4610
E-mail:jn@nijmanfranzetti.com

Attorneys for Plaintiff, Stepan Company

|  |  |
|---|---|
| | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY |
| STEPAN COMPANY,<br>               Plaintiff,<br><br>       v.<br><br>PFIZER, INC.<br>               Defendant. | Civil Action No.<br><br>**COMPLAINT** |

For its Complaint, Plaintiff Stepan Company ("Stepan"), by and through counsel, alleges as follows:

## INTRODUCTION

1.      This is a civil action brought against Pfizer, Inc. ("Pfizer") pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of

1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), the Declaratory Judgment Act, 28 U.S.C. § 2201, 2202, and Sections  58:10-23.11g(c)(1) and 58:10-23.11f(a)(2) of the New Jersey Spill Compensation and Control Act, N.J.S.A. §58:10-23.11 *et seq.* ("Spill Act").

2.      Pfizer's predecessor, Citro Chemical Company ("Citro"), generated hazardous substances resulting from its manufacture of citric acid and possibly other chemicals that were disposed of, released, and discharged at a facility known as the Maywood Chemical Company Superfund Site ("Site") located in Maywood, Bergen County, New Jersey. The hazardous substances attributable to Citro were disposed of, discharged and released on a portion of the Site known as the Gypsum Area, AOC-2 (beige on map). *See* Map attached as Exhibit A.

3.      Under CERCLA, Stepan seeks cost recovery, contribution, and a declaratory judgment from Pfizer for necessary costs of response it has incurred and will incur in a manner consistent with the National Oil and Hazardous Substances Contingency Plan, 40 Part 300, ("NCP") caused by a release and/or threat of release of hazardous substances from the Gypsum Area of the Site.  Under 113(g)(2) of CERCLA and the Declaratory Judgment Act, Stepan seeks a declaration as to Pfizer's liability for response costs relating to the Gypsum Area. Under the Spill Act, Stepan seeks cost recovery for all cleanup and removal costs incurred by Stepan because Pfizer is a person "who discharged a hazardous substances" and/or is "in any way responsible for a hazardous substance" at, under, migrating from, and around the Gypsum Area as well as contribution from Pfizer as a "discharger" of hazardous substances or a "person in any way responsible for a discharged hazardous substance" who is liable for cleanup costs at, under, migrating from, and around the Gypsum Area.  Stepan seeks a declaration as to Pfizer's liability for cleanup and removal costs relating to the Gypsum Area under the Spill Act and the New Jersey Declaratory Judgment Act.

## JURISDICTION AND VENUE

4.      This Court has exclusive jurisdiction over the First Claim for Relief, which arises under the laws of the United States, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201 and 42 U.S.C. § 9613. The Court also has jurisdiction over the Second Claim for Relief to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. § 9613.

5.      Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because the threatened and actual releases of hazardous substances that give rise to this action occurred and/or are occurring in this District and the Site is located in this District.

6.      This Court has supplemental jurisdiction over Stepan's state law claims for relief pursuant to 28 U.S.C. § 1367(a) for the additional reason that those claims are joined with substantially related claims and arise out of the same common nucleus of operative facts as Stepan's federal law claims.

## PARTIES

7.      Stepan is a Delaware Corporation with its principal place of business at 1101 Skokie Boulevard, Suite 500, Northbrook, IL 60062.

8.      Pfizer is a Delaware Corporation with its principal place of business at 235 East 42nd Street New York, NY 10017.

## FACTUAL ALLEGATIONS

9.      The Site is located on more than 90 properties in Maywood, Lodi and Rochelle Park, Bergen County, New Jersey.

10.     The Maywood Chemical Works ("MCW") began operations on a portion of the Site in 1895.

11.     MCW did not manufacture citric acid at the Site.

12.     Stepan purchased MCW and operated on a portion of the Site in 1959.

13.     Many of the MCW's operations were discontinued by 1960.

14.     Stepan is a current owner and operator of a portion of the Site ("Stepan Property").

15.     Stepan focuses on the production of specialty chemicals and has never manufactured citric acid at the Site.

16.     From 1904 through 1928, Pfizer's predecessor, Citro, purchased several tracts of property totaling 6.66 acres adjacent to the east of the Stepan Property ("Citro Property").

17.     The Citro Property is located at the southwest corner of W. Hunter Avenue and Maywood Avenue in Maywood, New Jersey.

18.     The Gypsum Area lies south of the Citro Property and southeast of the Stepan Property. It is primarily comprised of property referred to the "DeSaussure Property" as well as residential properties, abutting the DeSaussure Property to the east. *See* Exhibit A.

19.     Beginning in the early 1900's, Citro manufactured citric acid at the Citro Property, which generated a gypsum waste.

20.     According to historical literature and patents, the process for making citric acid in the early 1900s involved treating citric acid acetate from lemons with sulfuric acid, which then precipitated out a whitish gypsum.

21.     On information and belief, Citro used this process to manufacture citric acid at the Citro Property in the early 1900s.

22.     Citro disposed of some of its gypsum waste on the Citro Property as well as at the adjacent Gypsum Area and, on information and belief, disposed of other wastes at the Gypsum Area that may have contained hazardous substances.

23.     Citro's gypsum waste disposed of at the Gypsum Area contained hazardous substances.

24.     Pfizer's 1989 Response to the United States Environmental Protection Agency ("USEPA") 104(e) Request ("104(e)") admits that a former employee recalled that prior to the Pfizer acquisition in 1947, Citro "disposed of onsite" some of its citric acid and other waste.

25.     The 104(e) states that some of its former employees noticed "whitish coloration of surface and subsurface soils from time to time, especially when it rained. Occasionally, potholes would develop where this gypsum had been disposed of and would have to be filled with dirt or sand. Sometimes vehicles would become stuck in these holes, especially in the parking lot area before it was paved over."

26.     The 104(e) also states that a former Citro and Pfizer employee, Mr. Frank Prusack, recalled that the maintenance crew "occasionally had to clean out the drainage ditch or 'brook' running from the settling pond and down toward Route 17" as well as the ditch along the Citro Property.  He also stated that he occasionally noticed a 'whitish' stain in the ditch.

27.     The drainage ditch to Lodi brook abuts the Gypsum Area on the north and west and, based upon the 104(e) and area maps, the water ran from the Citro Property settling ponds south, west and then south again adjacent to the Gypsum Area.

28.     The 104(e) also indicates that Citro disposed of citric acid and gypsum waste in places not on the Citro Property prior to 1947, since its former employee said that only some of this waste was disposed of on-site prior to that time.

29.     In the 1920s or 1930s, the industry standard for manufacturing citric acid changed to a process developed by Pfizer, which involved a fermentation process using a fungi and a sugar, such as molasses.

30.     According to literature on the manufacture of citric acid, this new process required the use of a catalyst and trace metals. Manufacturers used ferrocyanide to catalyze biomass growth and to keep the fungal hyphae short. The formation of citric acid was maximized by the addition of trace metals, including copper, and gypsum was used to filter out impurities.

31.     Citro used this fermentation process to manufacture citric acid at the Citro Property beginning at some point in the mid-1920s to early-1930s and ending in 1947. The 104(e) claims that the manufacture of citric acid ceased "at the time of the acquisition" by Pfizer.

32.     Citro disposed of some of its gypsum waste from this fermentation process, which contained hazardous substances, on the Citro Property as well as at the Gypsum Area.

33.     Aerial photographs show disturbances indicative of the disposal of foreign material, the spreading of such material and/or the accumulation of such material within the Gypsum Area beginning at least by 1930 and through 1947.

34.     In 1980, a geotechnical investigation beneath a building on the Citro Property identified "blue/gray" gypsum material. *See* Exhibit B, Robert J. Carlin & Associates Letter to Myron Manufacturing Company dated April 9, 1980, Test Pit Logs p. 2.

35.     USEPA required Stepan to perform a Remedial Investigation of the DeSaussure property. That 1994 document describes the gypsum waste on the DeSaussure property, within the Gypsum Area, as "blue material."

36.     On May 3, 2022, Stepan collected and later analyzed ten (10) samples of gypsum waste from the Gypsum Area for various constituents. The results indicate the presence of two different groupings of gypsum waste. Some of the differentiating factors were color and the presence or absence of certain hazardous substances.

37.    The first group, samples 1 and 2, were light grey and white; contained detectable polynuclear aromatic hydrocarbons ("PAHs"); but contained no detectable cyanide. They also had a higher barium content and a much lower copper amount than the other samples. Samples 4-10, the second group, were either bluish, whitish, black, dark grey or a mixture; contained cyanide and elevated copper; but did not contain PAHs. *See* Results Attached at Exhibit C.

38.    Citro's gypsum waste contained hazardous substances under CERCLA, including cyanide, copper, barium, solvents, and PAHs, which were disposed of and released at the Gypsum Area.

39.    Based upon Stepan's review, samples 1 and 2 exhibit characteristics of Citro's original citric acid manufacturing process that generated a whitish gypsum waste and samples 4-10 contain chemical fingerprints indicative of the fermentation manufacturing process used by Citro that produced a blue/gray gypsum waste that contained cyanide.

40.    No known historic MCW manufacturing process or Stepan process would produce the same chemical fingerprints found in the two groups of gypsum waste sampled, samples 1 and 2 and samples 4-10,  taken from the Gypsum Area.

41.    In 1947, Pfizer acquired the capital stock of Citro and operated Citro as a wholly owned subsidiary until 1953, when it merged the company into another Pfizer subsidiary. Pfizer is the legal successor in interest to Citro.

42.    Pfizer holds Citro's liabilities relating to Citro's historic operations and the Site.

43.    In 1983, the USEPA placed the Site on the National Priorities List ("NPL"), pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605.

44.    The United States, through the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), is remediating all "FUSRAP Waste," as that term is defined by Federal Facilities

Agreement Under CERCLA Section 120, Administrative Docket No. II CERCLA-FFA-01001, at the Site.

45.    The Site was divided into four operable units ("OUs"), consisting of OU-1 (Non-FUSRAP Soil and Source Areas), OU-2 (FUSRAP Soils and Buildings), OU-3 (FUSRAP Groundwater) and OU-4 (Non-FUSRAP Groundwater).

46.    On or about August 21, 1987, Stepan entered into Administrative Order on Consent ("AOC") with the USEPA to conduct a remedial investigation and feasibility study for commercial properties near Stepan's operations within OU-1 and OU-4.

47.    Stepan has incurred and will continue to incur response costs associated with the 1987 AOC.

48.    In September 2014, USEPA issued a Record of Decision for OU-1 (Non-FUSRAP Soil and Source Areas) ("2014 ROD"). USEPA selected excavation and off-site disposal of all soil and material exceeding USEPA cleanup criteria as the remedial action for the Gypsum Area.

49.    Stepan has incurred and will continue to incur response costs associated with the implementation of the 2014 ROD.

50.    In 2015, Stepan entered into an "Administrative Settlement Agreement and Order on Consent for Preliminary Design Investigation and Remedial Design, Operable Unit 1" with USEPA to design the remedy for commercial properties near Stepan's operations within OU-1, (Non-FUSRAP Soil and Source Areas) ("2015 ASAOC").

51.    Stepan has incurred and will continue to incur response costs associated with the 2015 ASAOC.

52.    While conducting this work, Stepan became aware of additional gypsum waste at residential properties within the Gypsum Area adjacent to the DeSaussure Property.

53.     Based on Stepan's investigations to date, soil in the Gypsum Area contains hazardous substances in excess of USEPA cleanup criteria up to eight feet below ground surface.

54.     In January 2021, USEPA issued an Explanation of Significant Differences ("ESD") to explain its changes to the remedy for soil and source areas selected in its 2014 ROD. The ESD documented a change to the OU-1 remedy to include the newly discovered area of contamination at residential properties adjacent to the DeSaussure Property where gypsum waste was discovered during Pre-Design Investigation (PDI) activities.

55.     The ESD stated, with respect to the Gypsum Area, that:

"Starting in the early 1900s, Citro Chemical Company (Citro) manufactured various chemicals at its Maywood plant located southeast of and adjacent to the present Stepan property. The exact dates of the Citro operation are unknown; however, Citro was in existence in 1940 and purchased by Pfizer Inc. in 1947. As much as 600 tons of gypsum filter aid material, which also contained cyanide and metals, were reportedly disposed of within the boundaries of the DeSaussure property. During the RI, gypsum waste material, soil, and groundwater samples were collected from this AOC. The results of these investigations indicated that polyaromatic hydrocarbons (PAHs), select metals and cyanide were detected in soil and gypsum waste material samples above screening criteria."

56.     The ESD describes contamination in the Gypsum Area as "light grey and blue stained soft material."

57.     On July 15, 2021, UESPA issued a Unilateral Administrative Order under Section 106 of CERCLA for Remedial Action at the residential properties in the Gypsum Area of OU-1 ("2021 UAO"). The 2021 UAO ordered Stepan to conduct a remedial action at the residential properties involving excavation and offsite disposal of contaminated soil consistent with the ESD.

58.     Stepan has incurred and will continue to incur response costs involved with the 2021 UAO, including excavating soils at the residential properties, transporting the soil for disposal, disposing the soil at a permitted facility, and reconstructing the excavated areas.

59.     On September 21, 2021, Stepan entered into an "Amendment to Administrative Settlement Agreement and Order on Consent" for remedial design of the remedial action to be conducted on the residential properties within the Gypsum Area. ("2021 AASAOC").

60.     Stepan has incurred and will continue to incur response costs involved with the 2021 AASAOC, including conducting a preliminary design investigation and developing a remedial design for the remediation action to be conducted on the residential properties within the Gypsum Area.

61.     On September 30, 2022, USEPA sent a Notice of Liability and Consent Decree Negotiations in connection with the implementation of the remainder of the OU-1 remedial action (Non-FUSRAP Soil and Source Areas) ("OU-1 Consent Decree"). Stepan provided its Good Faith Offer to USEPA on October 28, 2022, and consent decree negotiations are proceeding.

62.     Stepan has incurred and will continue to incur response costs involved with the OU-1 that are associated with the OU-1 Consent Decree within the Gypsum Area.

63.     The OU-4 (Non-FUSRAP Groundwater) remedial investigation and feasibility study is ongoing ("OU-4 RI/FS") under the 1987 AOC. Stepan anticipates that USEPA will send a Notice of Liability and Consent Decree Negotiations for the remedial design and remedial action for OU-4 ("OU-4 Consent Decree").

64.     Stepan has incurred and will continue to incur response costs to perform the remedial design and remedial action for OU-4 (Non-FUSRAP Groundwater) pursuant to the OU-4 Consent Decree involving the Gypsum Area.

65.     Stepan will also incur additional recoverable response costs, including attorneys' fees and expenses, which are closely tied to the response actions at the Gypsum Area.

66.     Since 1993, Stepan has repeatedly notified Pfizer of its liability as an arranger, discharger and generator of hazardous substances disposed at the Gypsum Area. To date, Pfizer has consistently refused to contribute in any meaningful way to the work at the Gypsum Area.

67.     Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), Stepan has provided a copy of this Complaint to the Attorney General of the United States and the Administrator of USEPA.

## FIRST CLAIM FOR RELIEF
### Cost Recovery, CERCLA § 107(a) (42 U.S.C. § 9607(a))

68.     Stepan realleges and incorporates by reference Paragraph Nos. 1 through 67 of this Complaint as if fully restated herein.

69.     Pfizer is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

70.     The Site, including the Gypsum Area, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

71.     The waste disposed by Pfizer at the Gypsum Area of the Site consists of "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

72.     Hazardous substances have been released or are threatened to be released into the environment from the Gypsum Area of the Site, which have contaminated or will contaminate the environment, including soils and groundwater, within the meaning of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14) and 9601(22).

73.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

(a)     Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

* * * *

(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person . . . shall be liable for –

\* \* \* \*

(B)     any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

74.     Citro, Pfizer's predecessor, arranged for disposal or treatment, or arranged with third-party transporters for the disposal or treatment, of hazardous substances owned or possessed by Citro at the Gypsum Area.

75. A release and/or threatened release of hazardous substances at, under, migrating from, and around the Gypsum Area has caused and/or will cause Stepan to incur response costs, within the meaning of CERCLA, 42 U.S.C. § 9601(25), involving work associated with the 2021 UAO.

76.     Pfizer is liable jointly and severally to Stepan pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), for all such necessary response costs regarding the 2021 UAO incurred and to be incurred, including but not limited to, reasonable attorneys' fees and prejudgment interest, which are consistent with the NCP.

## SECOND CLAIM FOR RELIEF
### Contribution, CERCLA § 113 (42 U.S.C. § 9613)

77.     Stepan realleges and incorporates by reference Paragraph Nos. 1 through 76 of this Complaint as if fully restated herein.

78.     Sections 113(f)(1) and (3)(B) of CERCLA, 42 U.S.C. §§ 9613(f)(1) and (3)(B), provide, in relevant part, that:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) . . . .

A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement . . . .

79.     A release and/or threatened release of hazardous substances in the Gypsum Area have caused and will cause Stepan to incur response costs, within the meaning of CERCLA, 42 U.S.C. § 9601(25), regarding the 2021 AASAOC, which are consistent with the NCP.

80.     Stepan has resolved liability to the United States for work performed and to be performed in the Gypsum Area pursuant to the 2021 AASAOC.

81.     Pfizer is a liable party under CERCLA but has not resolved any of its liability to the United States or Stepan.

82.     Stepan is entitled to contribution from Pfizer under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for Pfizer's equitable share of costs and damages incurred and to be incurred by Stepan regarding the 2021 AASAOC, including but not limited to, reasonable attorneys' fees and prejudgment interest, which are consistent with the NCP.

### THIRD CLAIM FOR RELIEF
### Declaratory Judgment, CERCLA § 113(g)(2) (42 U.S.C. § 9613(g)(2)
### Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202)

83.     Stepan realleges and incorporates by reference Paragraph Nos. 1 through 82 of this Complaint as if fully restated herein.

84.     There is a present and actual controversy between Stepan and Pfizer concerning their respective rights and obligations regarding the response costs associated with the 2021 UAO, the 2021 AASAOC, the OU-1 and OU-4 Consent Decrees and future work in connection with the Gypsum Area of the Site.

85.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in relevant part, that:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response

costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action.  Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

86.    Stepan seeks a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against Pfizer holding it liable for all future response costs and damages associated with the 2021 UAO as well as its equitable share of future response costs concerning the AASAOC, the OU-1 Consent Decree and the OU-4 Consent Decree, which will be binding in any subsequent action to recover further response costs.

87.    There is a present and actual controversy between Stepan and Pfizer concerning their respective rights and obligations regarding all response costs in connection with the Gypsum Area of the Site.

88.    Stepan seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring Stepan's rights against Pfizer with respect to all past and future response costs involving the Gypsum Area.

89.    Stepan is entitled to a declaratory judgment against Pfizer for the above noted future response costs associated with the 2021 UAO, the 2021 AASAOC, the OU-1 Consent Decree and the OU-2 Consent Decree under Section 113(g)(2) of CERCLA, as well as all past and future response costs incurred and to be incurred in connection with the Gypsum Area pursuant to 28 U.S.C.§§ 2201 and 2202.

## FOURTH CLAIM FOR RELIEF
### Cost Recovery, Spill Act N.J.S.A. § 58:10-23.11g(c)(1)

90.    Stepan realleges and incorporates by reference Paragraph Nos. 1 through 89 of this Complaint as if fully restated herein.

91.     Pfizer is a person within the meaning of the New Jersey Spill Compensation and Control Act N.J.S.A. 58:10-23.11 et seq. (the "Spill Act").

92.     "Hazardous Substances" within the meaning of the Spill Act, N.J.S.A. § 58:10-23.11b, have been discharged by Citro, Pfizer's predecessor, at the Gypsum Area of the Site.

93.     Pfizer, as the successor to Citro, is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of Spill Act, N.J.S.A. §58:10-23.11f(a)(2)(a).

94.     Pursuant to the Spill Act, N.J.S.A. 58:10-23.11g(c)(1), Pfizer is strictly, jointly and severally liable, without regard to fault, for all cleanup and removal costs incurred by Stepan because it is a person "who has discharged a hazardous substance" and/or is "in any way responsible for a hazardous substance" at the Gypsum Area.

95.     As a result of the discharge of hazardous substances for which Pfizer is liable under the Spill Act, Stepan has incurred and will continue to incur cleanup and removal costs within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b, for testing, investigation, removal and remediation of these discharges.

96.     Pursuant to the Spill Act, Pfizer is liable jointly and severally to Stepan pursuant to 58:10-23.11g(c)(1) for all cleanup and removal costs incurred and to be incurred in connection with the Gypsum Area.

## FIFTH CLAIM FOR RELIEF
### Contribution, Spill Act N.J.S.A. § 58:10-23.11f(a)(2)(a)

97.     Stepan realleges and incorporates by reference Paragraph Nos. 1 through 96 of this Complaint as if fully restated herein.

98.     The Spill Act provides, in pertinent part, that "[w]henever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and

persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance." N.J.S.A. § 58:10-23.11f(a)(2)(a).

99.    Pfizer is a "person" within the meaning of Spill Act. N.J.S.A. § 58:10-23.11b.97. "Discharges" within the meaning of the Spill Act, N.J.S.A. § 58:10-23.11b, have occurred at the Gypsum Area of the Site.

100.    "Hazardous Substances" within the meaning of the Spill Act, N.J.S.A. § 58:10-23.11b, have been discharged by Citro, Pfizer's predecessor, at the Gypsum Area of the Site.

101.    Pfizer, as the successor to Citro, is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of Spill Act, , N.J.S.A. §58:10-23.11f(a)(2)(a).

102.    Stepan has, and continues to, clean up and remove the discharges of hazardous substances for which Pfizer is a discharger or a "person in any way responsible for a discharged hazardous substance" and has incurred and is incurring cleanup and removal costs involving the Gypsum Area.

103.    In or about 1987, Stepan began remedial investigations and feasibility studies of the chemical contamination at the Site, including those that involve the Gypsum Area. This work is ongoing.

104.    Stepan has and continues to investigate, clean up and remove Pfizer's discharges at the Site, including those on, under, migrating from and around the Gypsum Area.  The foregoing costs constitute "cleanup and removal costs" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b.

105.    Pursuant to the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2)(a), Stepan is entitled to contribution from Pfizer for all cleanup and removal costs that Stepan has incurred or will occur in connection with the Gypsum Area for which Pfizer is deemed liable, which costs should be allocated to Pfizer using such equitable factors as the Court deems appropriate.

### SIXTH CLAIM FOR RELIEF
### Declaratory Relief Under the New Jersey Declaratory Judgment Act N.J.S.A. §2A-16-50

106.    Stepan realleges and incorporates by reference Paragraph Nos. 1 through 105 of this Complaint as if fully restated herein.

107.    Stepan requires a declaratory judgment against Pfizer under the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq., declaring Pfizer liable for past and future cleanup and removal costs that will be binding in any subsequent action.

108.    An actual, substantial, and justiciable controversy exists between Stepan and Pfizer regarding their respective rights and obligations for the investigation and remediation of the Gypsum Area and the costs and/or damages that have been and will be incurred by Stepan.

109.    A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to Pfizer's liability to Stepan.

110.    Accordingly, a declaratory judgment should be entered pursuant to N.J.S.A. 2A:16-50 et seq. and the Spill Act holding Pfizer liable for cleanup and removal costs or damages that Stepan has incurred and will incur in connection with the hazardous substances disposed of, released at or impacting the Gypsum Area.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stepan Company respectfully request that this Court:

A.    Enter a judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 107(a), in favor of Stepan and against Pfizer, holding Pfizer strictly, jointly and severally liable for all necessary costs

of response and damages consistent with the NCP incurred and to be incurred by Stepan relating to the 2021 UAO, including reasonable attorneys' fees and pre-judgment interest;

B.      Enter judgment pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), in favor of Stepan and against Pfizer, holding Pfizer liable for its fair and equitable share of the necessary costs of response and damages consistent with the NCP incurred and to be incurred by Stepan relating to the 2021 AASAOC, including reasonable attorneys' fees and pre-judgment interest;

C.      Enter a declaratory judgment against Pfizer finding that it is liable under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) for Stepan's NCP-consistent future response costs, and Section 28 U.S.C. §§ 2201 and 2202 for Stepan's NCP-consistent past and future response costs in connection with the Gypsum Area, including reasonable attorneys' fees and pre-judgment interest;

D.      Enter a judgment pursuant to the Spill Act, N.J.S.A. 58:10-23.11g(c)(1), finding Pfizer strictly, jointly and severally liable, without regard to fault, and awarding Stepan all cleanup and removal costs incurred and to be incurred by Stepan in connection with the Gypsum Area;

E.      Allocate to Pfizer all  past and future cleanup and removal costs incurred and to be incurred by Stepan in connection with the Gypsum Area, pursuant to Section 58:10-23.11f(a)(2)(a) of the Spill Act, N.J.S.A. § 58:10-23.11f(a)(2)(a);

F.      Enter a declaratory judgment against Pfizer finding that it is strictly, jointly and severally liable under the New Jersey Declaratory Judgment Act, N.J.S.A. §2A-16-50 and the Spill Act, without regard to fault, for all past and future cleanup and removal costs incurred and to be incurred by Stepan in connection with the Gypsum Area; and

G.      Award Stepan interest and costs of suit, including reasonable attorneys' fees and consultant

fees as permitted by law; and order any such other relief as the Court may deem just and proper

under the circumstances.

Dated: March 24, 2023                    Respectfully submitted,

                                         ___s/ Alexa Richman-LaLonde_____
                                         Alexa Richman-LaLonde
                                         RIKER DANZIG LLP
                                         Headquarters Plaza
                                         One Speedwell Avenue
                                         Morristown, NJ 07962-1981
                                         (973) 538-0800
                                         E-mail: alalonde@riker.com

                                         Susan E. Brice
                                         Jennifer T. Nijman
                                         Kristen L. Gale
                                         (*pro hac vice* motion to be filed)
                                         NIJMAN FRANZETTI, LLP
                                         10 S. LaSalle St., Ste 3600
                                         Chicago, IL 60603
                                         Tel: (312) 251-5250 Fax: (312) 251-4610
                                         E-mail: sb@nijmanfranzetti.com
                                                 jn@nijmanfranzetti.com
                                                 kg@nijmanfranzetti.com

                                         ATTORNEYS FOR PLAINTIFF STEPAN COMPANY

## <u>CERTIFICATION PURSUANT TO L. Civ. R. 11.2</u>

To the best of my knowledge, information, and belief, I certify that the matter in controversy is not the subject of any action pending in any court or of a pending arbitration proceeding in connection with the subject of the action.  I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

RIKER DANZIG, LLP
Attorneys Plaintiff,
Stepan Company


By:  _s/ Alexa Richman-LaLonde_
     Alexa Richman-LaLonde
     A Member of the Firm

Dated: March 24, 2023