UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPAN COMPANY, | : |
| Plaintiff, | : Civil Action No. 23-1676 (JXN) (JSA) |
| v. | : |
| | : OPINION |
| PFIZER, INC., | : |
| Defendant. | : |

**NEALS**, District Judge:

This matter comes before the Court on Defendant Pfizer Inc.'s ("Pfizer's") motion to dismiss Plaintiff Stepan Company's ("Plaintiff") amended complaint (ECF No. 31) (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 32). Plaintiff opposed (ECF No. 38-1), and Pfizer replied (ECF No. 39). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 2201, and 42 U.S.C. § 9613. Venue is proper pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 9613(b). The Court has carefully considered the parties' submissions and decides this matter without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the reasons set forth below, Pfizer's motion to dismiss (ECF No. 32) is **GRANTED** in part and **DENIED** in part. Count Four is **DISMISSED with prejudice**; Counts One and Two are limited to the 2021 Unilateral Administrative Order ("UAO") and 2021 Amendment to Administrative Settlement Agreement and Order on Consent ("AASAOC"); and all other requests are **DENIED**.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This is an environmental matter brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10-23.11, *et seq.* The relevant facts follow.[1]

"Pfizer's predecessor, Citro Chemical Company ('Citro')," which Pfizer is the "legal successor in interest to[,]" "generated hazardous substances resulting from its manufacture of citric acid" that was "disposed of" at the Maywood Chemical Company Superfund Site" (the "Superfund Site"). (Am. Compl. ¶¶ 2, 41). Citro disposed of the "hazardous substances" on part of the Superfund Site "known as the Gypsum Area[,]" as well as the "groundwater under the Gypsum Area." (*Id.* ¶ 2; exhibit A (ECF No. 31-1)).

"Beginning in the early 1900's, Citro manufactured citric acid" that "generated gypsum waste." (*Id.* ¶ 19). "Citro disposed of some of its gypsum waste[,]" which "may have contained hazardous substances[,]" on property "adjacent to" Plaintiff's property that is known as the "Citro Property[,] as well as at the adjacent Gypsum Area . . . ." (*Id.* ¶¶ 16, 22). Citro also "disposed of some of its gypsum waste from" a "fermentation process" "developed by Pfizer," that "contained hazardous substances," including "cyanide, copper, barium, solvents, and PAHs" on the Citro Property and the Gypsum Area. (*Id.* ¶¶ 29, 32, 38).

On August 21, 1987, Plaintiff "entered into an Administrative Order on Consent" with the United States Environmental Protection Agency (the "EPA") to conduct a remedial investigation and feasibility study for commercial properties near Plaintiff's "operations" within two of the four "operable units" at the Superfund Site: (1) ("OU-1") and (2) ("OU-4"). (*Id.* ¶¶ 45-46)). As the

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

result of settlement agreements, Orders, and negotiations with the EPA, Plaintiff "incurred and will continue to incur response costs involved with" the OU-1 work. (*Id.* ¶¶ 50-52, 57-62). And because the OU-4 "remedial investigation and feasibility study" continues, Plaintiff "will continue to incur response costs to perform the remedial design and remedial action[.]" (*Id.* ¶¶ 63-64).

Plaintiff alleges causes of action for: (i) cost recovery under CERCLA § 107(a) (Count One); (ii) contribution under CERCLA § 113 (Count Two); (iii) declaratory judgment under CERCLA § 113(g)(2) and 28 U.S.C. §§ 2201, 2202 (Count Three); (iv) cost recovery under the Spill Act (Count Four); (v) contribution under the Spill Act (Count Five); and (vi) declaratory relief under New Jersey's Declaratory Judgment Act, N.J.S.A. 2A-16-50, *et seq.* (Count Six).

On July 31, 2023, Pfizer filed the pending motion to dismiss. On August 22, 2023, Plaintiff opposed. On August 29, 2023, Pfizer replied. This matter is ripe for consideration.

II.     **LEGAL STANDARD**

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In analyzing the sufficiency of a complaint, the Third Circuit requires that courts engage in a three-part inquiry: (1) recite the elements that must be pled in order to state a claim; (2)

3

determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

### III.     DISCUSSION

Pfizer summarizes the arguments supporting the motion to dismiss as follows. (Pfizer's Mem. of Law (ECF No. 32-1) (the "Mem. of Law") at 8-9).[2] First, Count Four must be dismissed with prejudice because the Spill Act does not private a right of action for cost recovery. Second, the Amended Complaint fails to allege sufficient facts linking Pfizer to groundwater contamination to trigger liability under CERCLA or the Spill Act. And without an underlying predicate claim, Counts Three and Six for declaratory relief with respect to groundwater costs must also be dismissed with prejudice. Third, the Court should dismiss any claims for costs pursuant to the 1987 Administrative Order on Consent, as well as a settlement agreement in 2015. Further, to the extent that Counts One and Two seek the recovery of such costs, those claims are barred by the applicable statutes of limitation.

Plaintiff counters that the Spill Act provides a private cause of action for cost recovery. Second, the Federal Rules of Civil Procedure do not permit dismissal of portions of a claim or allegations. Finally, that the pleading sufficiently connects Pfizer's conduct to contamination. (Pl.'s Mem. of Law (ECF No. 38-1) ("Opp.") at 8).

### A.     Rule 12(b)(6) is Sufficient to Assess the Sufficiency of Plaintiff's Claims

The Court first addresses Plaintiff's contention that Rule 12(b)(6) does not allow for entry of a "piecemeal order" that dismisses portions of claims. (Pl.'s Opp. at 14 - 15). Plaintiff cites to

---

[2] The Court refers to the ECF page numbers throughout this Opinion.

sister Circuit cases from the Seventh Circuit Court of Appeals, the Utah District Court, the Eastern District of New York, and the District of Columbia for this proposition.[3] (Opp. at 14). This argument does not require extensive analysis. The Third Circuit's three-part inquiry and the text of the Rule provide the necessary guidance, without consulting sister Circuit cases, to assess whether Plaintiff has provided adequate factual support for a particular claim at this stage of the litigation. *See Santiago,* 629 F.3d at 130; *see also Fed*. R. Civ. P. 12(b)(6). Accordingly, the Court considers Pfizer's substantive arguments to dismiss the Amended Complaint.

### B. Count Four is Dismissed Because the Spill Act Does Not Provide a Private Right of Action for Cost Recovery

Pfizer argues that the Spill Act does not permit a private right of action for cost recovery. (Mem. of Law at 13-14); *see also* (Am. Compl. ¶¶ 91-97) ("Cost Recovery, Spill Act N.J.S.A. § 58:10-23.11g(c)(1)"). In opposition, Plaintiff counters that the Spill Act provides separate causes of action for contribution and cost recovery. (Opp. at 11-14). The Court disagrees with the latter.

There is a split in this District regarding whether the Spill Act provides for a private a right of action for cost recovery. In *Giordano v. Solvay Specialty Polymers USA, LLC*, the court declined to decide *sua sponte* whether the Spill Act permits private parties to "recover cleanup costs directly from" dischargers or "whether such relief must be limited to [a] contribution claim…," because defendant moved to dismiss on other grounds. 522 F. Supp. 3d 26, 37-38 (D.N.J. 2021). The court noted that it "is not clear[,]" however, whether the Spill Act provides a "private right of action to recover cleanup costs[.]" *Id.* at 36 (citations omitted).

Similarly in *Clover Leaf Plaza, Inc. v. Shell Oil Co.*, the court recognized that "there appears to be a difference of opinion in this District as to whether the Spill Act provides a private

---

[3] *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1170 (D. Utah 2020); *In re Am. Exp. Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d 94, 103 (E.D.N.Y. 2018); and *McDaniel v. Vilsack*, 947 F. Supp. 2d 24, 26 n.1 (D.D.C. 2013).

5

right of action." No. 96-5457, 1998 WL 35288754, at *7 n.3 (D.N.J. Aug. 13, 1998); *compare, with Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1053 (D.N.J. 1993) (holding a private right of action is permitted); *and Bowen Engineering v. Estate of Reeve,* 799 F. Supp. 467, 478 (D.N.J. 1992) (finding that the "Spill Act *does not* create a private right to recover cleanup costs . . . .") (citation omitted) (emphasis added).

Further, like *Giordano*, the court in *Clover Leaf Plaza* left undecided the issue of whether a private right of action for cost recovery exists under the Spill Act as it was not squarely before the court. *Clover Leaf Plaza, Inc.*, 1998 WL 35288754, at *7 n.3. Likewise, in *Klockner*, the court decided the narrow question of whether private parties, and not just the DEP, can recover "clean-up costs" from "other private parties." *Klockner*, 811 F. Supp. at 1051 (citations omitted). It did not specify whether such actions are limited to contribution claims or included cost-recovery. *Id.*

The Spill Act is the New Jersey analog to CERCLA. *Fishbein Family P'ship v. PPG Indus., Inc.,* 871 F. Supp. 764, 772 (D.N.J. 1994); *New Jersey Dep't. of Envtl. Protection v. Gloucester Env. Mgmt. Servs.,* 821 F. Supp. 999, 1009 (D.N.J. 1993). Like CERCLA, the Spill Act prohibits the discharge of hazardous substances and provides for the remediation of spills. *See* N.J.S.A. 58:10–23.11g(c)(1); *SC Holdings, Inc. v. A.A.A. Realty Co.,* 935 F. Supp. 1354, 1365 (D.N.J. 1996). As with CERCLA, the Spill Act in its original version did not provide a private right of action for contribution or cost recovery. *Bowen Engineering,* 799 F. Supp. at 478-79; *Allied Corp. v. Frola,* 701 F.Supp. 1084, 1091 (D.N.J. 1988). Under New Jersey common law, "liable private parties therefore were entitled to pursue only contribution . . . ." *SC Holdings, Inc.*, 935 F. Supp. at 1365.

"Consequently, courts were left to question a liable party's or PRP's right to contribution, which precipitated reluctance on the part of many dischargers and other responsible parties to enter

6

into cleanup agreements with" DEP "for fear that they may not be able to recover some costs from the other liable parties . . . ." *Id.* at 1365 (quoting Senate Environmental Quality Committee Statement, Senate No. 2657 and Assembly No. 3659, L.1991, c. 372" (the "SEQC Statement"). *Id.* at 1365 (internal quotation marks omitted).

The "New Jersey Legislature amended the Spill Act in 1991 to provide an express right of contribution." *Id.* at 1365. The amendment, "which became effective in 1992," reads "substantially similar to section 113(f) of CERCLA, by providing in relevant part[:]"

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance....

*Id.* at 1365-66 (quoting N.J.S.A. 58:10–23.11f(a)(2)).

The SEQC statement "accompanying N.J.S.A. 58:10–23.11(f) has explained that this substitute sets forth in the Spill Act a provision that allows dischargers and others who clean up and remove a hazardous discharge to seek contribution from other dischargers and persons who conduct cleanups and removals." *Id.* at 1366 (quoting SEQC Statement) (internal quotation marks omitted). "The statute's silence as to joint liability is notable as well, since contribution has traditionally existed on a several basis." *Id.* at 1366. "While N.J.S.A. 58:10–23g(c)(1) specifies that liability shall be joint and several, N.J.S.A. 58:10–23f(a)(2) makes no such statement." *Ibid.* "Instead, it reads much more closely to section 113(f) of CERCLA, by providing a right of contribution and authorizing the courts to equitably allocate the costs of cleanup and removal among the parties." *Id.* at 1366 (citing N.J.S.A. 58:10–23g(c)(1)).

In carefully reviewing the case law and statutory language, the Court finds that a private right of action for cost recovery is limited to a contribution claim. *See Bowen Engineering*, 799

7

F. Supp. at 478 ("The Spill Act does not provide a private right of action for recovery of cleanup costs and other damages.") (internal quotation marks and citations omitted).

The "Spill Act provides two causes of action:" (1) "to recover clean-up costs from other discharge[r]s (contribution claim)," and (2) "to recover damages from the NJDEP, or Spill Compensation Fund." *Emerald Bay Developers, LLC v. Lenyk Automotive, Inc.*, 2018 WL 4568358, at *4 n.8 (N.J. Sup. Ct. App. Div. 2018) (internal quotation marks, brackets, and citations omitted). Thus, only a claim for contribution is available to private litigants, whether brought before or after the statutory amendment. *See N.J. Dep't of Env't Prot. v. Exxon Mobil Corp.*, 453 N.J. Super. 272, 268 (N.J. Sup. Ct. App. Div. 2018), *certif. denied*, 233 N.J. 378 (2018) ("Legislature amended the Spill Act to provide a private right of action for contribution so that pollution dischargers could share the costs of remediation with additional dischargers not so designated by DEP, i.e., non-settling entities.") (citations omitted).[4]

The purpose of the contribution amendment was to encourage prompt and effective remediation by those parties who might otherwise be reluctant for fear of bearing the entire cost of cleanup when other parties were also responsible. *S. Envtl. Quality Comm., Statement to S. Comm. Substitute for S. No. 2657 and Assemb. No. 3659,* 204 Leg. at 1-2 (Dec. 10, 1990). The "amendment expressly created a separate contribution cause of action for private parties seeking to recover a portion of the cleanup costs." *Magic Petroleum Corp. v. Exxon Mobil Corp.,* 218 N.J. 390, 403 (2014) (citations omitted). "Thus, under the Spill Act, the Legislature established a private right of action in contribution so that dischargers designated by the DEP could share the cost of remediation with additional potentially responsible dischargers not initially designated by

---

[4] Though Plaintiff contends that the court's analysis in *Exxon Mobil Corp.* should be ignored as dicta (Opp. at 13), such statements are helpful and should not be disregarded. *See Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007); *Kaetz v. United States*, No. 22-3469, 2024 WL 44525, at *2 n.7 (D.N.J. Jan. 4, 2024).

the DEP." *Id.* at 405. Indeed, the "Spill Act can fairly be read only to allow a" potentially responsible party or "PRP" a "right to seek contribution, not to maintain a cost recovery action." *SC Holdings, Inc.,* 935 F. Supp. at 1366.

The *SC Holdings, Inc.*'s holding as to the Spill Act interpretation and its progeny are further buttressed by more recent decisions in this district. In 2014, this court held that "[i]t is well-settled that the Spill Act does not provide a private right of action for recovery of cleanup costs and other damages." *Sandvik, Inc. v. Hampshire Partners Fund VI, L.P.*, No. 13-4667, 2014 WL 1343081, at *8 (D.N.J. Apr. 4, 2014) (internal quotation marks, brackets, and citation omitted). Two years later, this court granted summary judgment on a cost recovery claim after concluding that "[a]side from the right to contribution . . ., the Spill Act does not provide any private right of action for cleanup costs." *Virginia Street Fidelco, L.L.C. v. Orbis Prods. Corp.*, No. 11-2057, 2016 WL 4150747, at *10 (D.N.J. Aug. 3, 2016).[5] Accordingly, Count Four is **dismissed with prejudice**.

### C. Counts One and Two are Limited to the 2021 UAO and 2021 AASAOC

Pfizer contends that Counts One and Two should be dismissed as time-barred "to the extent they seek costs incurred pursuant to the 1987 and 2015 Orders . . . ." (Mem. of Law at 19). In response, Plaintiff states that it "seeks only costs for work mandated under the 2021 UAO, the 2021 AASAOC[,]" and "OU-4." (Opp. at 18-19). (*See* Am. Compl. ¶¶ 57, 59). Plaintiff also does not contend that the 1987 AOC and the 2015 ASAOC create cost recovery or contribution claims allegedly barred by the applicable statutes of limitation. (Opp. at 19). Thus, Counts One and Two are accordingly limited to the 2021 UAO and 2021 AASAOC.

---

[5] Plaintiff contends that the Court should only consider *Klockner*, a reported case purportedly on point. (Opp. at 12-14). While courts may consider unpublished opinions (*compare Caissie v. City of Cape May*, 619 F. Supp. 2d 110, 124 (D.N.J. 2009) (citations omitted); *and Jorden v. Glass*, No. 9-1715, 2010 WL 786533, at *3 n.9 (D.N.J. Mar. 5, 2010)), the Court also considered the reported cases *Bowen Engineering* and *SC Holdings, Inc.*

### D.       The Amended Complaint Sufficiently States CERCLA/Spill Act Claims

Pfizer contends that the claims are deficient because the Amended Complaint does not sufficiently allege "some connection between the actions of" Pfizer and the "contamination at the sites in question" to state a claim under CERCLA or the Spill Act. (Mem. of Law at 15).[6] The Court disagrees.

Plaintiff alleges in the Amended Complaint that the "hazardous substances attributable to Citro[,]" and now Pfizer, "were disposed of, discharged and released on a portion of the [Superfund] Site known as the Gypsum Area . . .[,] as well as in the groundwater under the Gypsum Area." (Am. Compl. ¶ 2). Further, that the "water ran from the Citro Property settling ponds[,]" which are "adjacent to the Gypsum Area, [] caus[ing] hazardous substances at the Citro Property . . . to contaminate the surface and groundwater under, in[,] and around the Gypsum Area." (*Id.* ¶ 27). And that "[g]roundwater sampling beneath the Gypsum Area" identified "cyanide and other hazardous substances attributable to Citro's operations." (*Id.* ¶ 56).

Plaintiff further alleges that the Superfund Site includes OU-4 (groundwater), and that Pfizer "purchased" the subject plant from Citro in 1947, "operated Citro as a wholly owned subsidiary until 1953," is "the legal successor in interest to Citro[,]" and "holds Citro's liabilities relating to Citro's historic operations" at the Superfund Site. (*Id.* ¶¶ 41-42, 45, 55). And that Plaintiff incurred response costs related to the "groundwater under" or "migrating from" the Gypsum Area. (*Id.* ¶¶ 84, 105). These allegations are sufficient to suggest "some connection" between Pfizer and the purported contamination to state the CERCLA and Spill Act claims.

---

[6] Pfizer cites *New Jersey Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 105 (3d Cir. 1999) and *Waugaman v. City of Greensburg*, 841 F. App'x 429, 434 (3d Cir. 2021).

### 1.     The CERCLA Claims - Counts One and Two

To state a CERCLA claim, Plaintiff must allege four elements "1) the defendant falls within one of the [] categories of 'responsible parties';[7] 2) the hazardous substances are disposed at a 'facility'; 3) there is a 'release' or 'threatened release' of hazardous substances from the facility into the environment; and 4) the release causes the incurrence of 'response costs.'" *Outlet City, Inc. v. W. Chem. Prods., Inc.*, 60 F.App'x 922, 925-26 (3d Cir. 2003) (citation omitted).

Under CERCLA, a "person" means "an individual, firm, corporation, association, partnership . . . ." 42 U.S.C. § 9601(21).  A "facility" means "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed . . . ." § 9601(9).  A "release" includes "any spilling" or "discharging, . . . into the environment . . . ."  § 9601(21).  A "hazardous substance" means "any element, compound, mixture, solution or substance" that "when released into the environment may present substantial danger to the public health or the environment . . . ." §§ 9601(14), 9602(a).

Here, Plaintiff alleges that Pfizer is a "person" and that the Superfund Site is a "facility" under CERCLA.  (Am. Compl. ¶¶ 69-70).  Also, that "Citro, Pfizer's predecessor, arranged for disposal or treatment, or arranged with third-party transporters for the disposal or treatment, of hazardous substances owned or possessed by Citro at the Gypsum Area." (*Id.* ¶ 74).  Plaintiff further alleges that Pfizer "disposed" of "waste" at the "Gypsum Area of the [Superfund] Site [that] consists of 'hazardous substances[,]'" such as "cyanide[,]" and how Citro purportedly discharged the hazardous substances.  (*Id.* ¶¶ 27, 41-42, 55, 71-72).  And that those hazardous substances have and "will contaminate the environment, including soils and groundwater . . . ."

---

[7] (1) current owners and operators of the 'facility' at which the contamination occurred; (2) persons who were owners or operators of the facility 'at the time of disposal of any hazardous substance'; (3) persons who arranged for the disposal or treatment of the hazardous substance; and (4) persons who transported the hazardous substance." *Litgo N.J., Inc.*, 725 F.3d 379; 42 U.S.C. § 9607(a).

11

(*Id.* at ¶ 72).  Plaintiff also alleges that it has and will incur response costs under the 2021 UAO, 2021 AASAOC, and OU-4 (*see id.* ¶¶ 58, 60, 62, 64-65).  This is sufficient to state a CERCLA claim.  Accordingly, the motion is denied as to Counts One and Two.

### 2. The Spill Act Contribution Claim - Count Five

To state a Spill Act contribution claim, Plaintiff "must allege that (1) a defendant was in any way responsible for the discharge of a hazardous substance; and (2) that the plaintiff engaged in clean-up or removal of the hazardous substance."  *760 New Brunswick Urban Renewal Ltd. Liab. Co. v. Navigators Specialty Ins. Co.*, No. 20-5877, 2021 WL 287876, at *8 (D.N.J. Jan. 28, 2021) (internal quotation marks and citation omitted).

Plaintiff alleges that Pfizer is a "discharger" and that discharges "occurred at the Gypsum Area" of the Superfund Site.  (Am. Compl. ¶¶ 100, 102).  Further, that Citro, Pfizer's predecessor, discharged hazardous substances at the Gypsum Area, causing Plaintiff to remove, clean up, and investigate the same, thus incurring cleanup and removal costs.  (*Id.* ¶¶ 101, 103-05).  These facts sufficiently allege a Spill Act claim, and the motion is denied as to Count Five.

### 3. The Declaratory Judgment Claims - Counts Three and Six

Pfizer argues that the claims "with respect to groundwater costs" should be dismissed because Plaintiff does not have "an underlying predicate claim[.]" (Mem. of Law at 7, 18).  The Court disagrees having found that Plaintiff has sufficiently pled predicate claims.

"CERCLA provides for declaratory relief once the party seeking declaratory judgment establishes principal liability under Section 107(a)."  *Reichhold, Inc. v. U.S. Metals Refining Co.*, 522 F. Supp. 2d 724, 729 (D.N.J. 2007) (citations omitted).  The same holds true under the Spill Act.  Whether under CERCLA, 28 U.S.C. §§ 2201, 2202, and/or the Declaratory Judgment Act, such relief "must [be] link[ed]" to "an entitlement to a substantive right."  *Interfaith Cmty. Org. v.*

*Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 496 (D.N.J. 2002). Accordingly, "*if* all CERCLA claims were to be eventually dismissed in this matter, *then* declaratory judgment under CERCLA [or the Spill Act] would not be available." *Interfaith Community Org.*, 215 F. Supp. 3d at 496 (citations omitted); *see also Interfaith Community Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 871 (D.N.J. 2003) (Since plaintiff cannot "sustain its burden on its substantive [], CERCLA and Spill Act claims against" the defendants, plaintiff "is not entitled to a declaratory judgment.") (citations omitted).

Because the Amended Complaint sufficiently states the CERCLA and Spill Act claims, the declaratory judgment claims similarly proceed. *See Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 291 n.11 (3d Cir. 2000) (finding declaratory judgment because in part "nothing in the record suggest[s] that appellants ever will incur response costs . . . ."). Accordingly, the motion is denied as to Counts Three and Six.

## IV.     CONCLUSION

For the reasons set forth above, Pfizer's motion to dismiss (ECF No. 32) is **GRANTED** in part and **DENIED** in part.

DATED: 6/26/2024

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge